# Applicability of the Post-Employment Restrictions of 18 U.S.C. § 207(c) to Assignees Under the Intergovernmental Personnel Act

The post-employment restrictions of 18 U S.C. § 207(c) apply to persons who are assigned from a university or a state or local government to the Department of Energy under the Intergovernmental Personnel Act and are compensated at or above the ES–5 level, except for those who occupy positions ordinarily below the ES–5 level and who receive salaries only from the detailing employers, with the federal agency reimbursing those employers for an amount less than an ES–5 salary.

June 26, 2000

MEMORANDUM OPINION FOR THE
ACTING DEPUTY ASSISTANT GENERAL COUNSEL
DEPARTMENT OF ENERGY

You have asked for our opinion whether the post-employment restrictions of 18 U.S.C. § 207(c) (1994 & Supp. IV 1998) apply to certain persons assigned from a university or a state or local government to the Department of Energy ("DOE") under the Intergovernmental Personnel Act, 5 U.S.C. §§ 3371–3376 (1994 & Supp. IV 1998) ("IPA"), if the assignees are compensated at or above the ES–5 level. The assignees in question, in our view, fall into four groups: (1) those who occupy positions normally compensated at or above the ES–5 level but who receive salaries to which the federal contribution is only partial and does not reach the ES–5 level; (2) those who occupy positions ordinarily below the ES–5 level and who receive salaries paid to them in part by their employing federal agency; (3) those who occupy positions ordinarily below the ES–5 level and who receive salaries only from the university or state or local government, with the agency reimbursing that employer for an amount equal to or greater than an ES–5 salary; and (4) those who occupy positions ordinarily below the ES–5 level and who receive salaries only from the university or state or local government, with the agency reimbursing that employer for an amount less than an ES–5 salary.[1] We conclude that section 207(c) covers the first three categories of assignees, but not the fourth.

---

[1] You drew the categories somewhat differently in your submissions. Letter for Dawn Johnson, Acting Assistant Attorney General, Office of Legal Counsel, from Susan F. Beard, Deputy Assistant General Counsel for Standards of Conduct, Department of Energy (Nov 24, 1997), *see also* Letter for Daniel L. Koffsky, Special Counsel, Office of Legal Counsel, from Susan F. Beard, Deputy Assistant General Counsel for Standards of Conduct, Department of Energy (May 18, 1998) ("DOE Memorandum").

I.

Under 18 U.S.C. § 207(c), certain federal officers and employees are subject to a post-employment "cooling off" restriction, which prohibits them, within one year of the end of their employment, from making,

> with the intent to influence, any communication to or appearance before any officer or employee of the department or agency in which such person served . . . , on behalf of any other person (except the United States), in connection with any matter on which such person seeks official action by any officer or employee of such department or agency.

*See* 18 U.S.C. § 207(c)(1).[2] Although a number of the provisions in section 207 apply to all executive branch employees,[3] section 207(c) applies only to those employees who occupy one of the high-level or senior positions identified by the statute.[4] *Id.* The positions identified by section 207(c) are those (1) compensated at a rate of pay specified according to subchapter II of chapter 53 of title 5; (2) compensated at a basic rate of pay that, excluding locality-based pay and other similar adjustments, is equal to or greater than the rate of basic pay for level 5 of the Senior Executive Service ("ES–5"); (3) filled through appointment by the President or Vice-President under 3 U.S.C. §§ 105, 106 (1994); or (4) held by a commissioned officer of the uniformed services in a pay grade of O–7 or above. 18 U.S.C. § 207(c)(2).

All of the assignees in question here receive compensation at a rate greater than the ES–5 level. The question is whether they are "*employed in a position . . . for which the basic rate of pay . . . is equal to or greater than the rate of basic pay payable for [ES–5].*" 18 U.S.C. § 207(c)(2)(A)(ii) (emphasis added).

The IPA provides two methods by which employees may be temporarily assigned from a university or a state or local government to work for a federal agency. Under the first, the assignee is "appointed" in the agency and becomes entitled to a federal salary in accordance with the laws governing the pay of federal employees. 5 U.S.C. § 3374(a)(1) & (b). Under the second, the assignee is "detailed" to a federal agency and is not entitled to federal pay, "except to the extent that the pay received from the [detailing employer] is less than the appro-

---

[2] Section 207 has seven specific exceptions *See* 18 U S.C. § 207(j)(1)–(6); *see also id.* § 207(j)(7).

[3] *See, e.g*, 18 U.S.C. § 207(a)(1) (1994) (life-time ban on representation involving certain matters in which an employee was personally and substantially involved during government service); *see also* 18 U S.C. § 207(a)(2) (two-year ban on involvement in proceedings pertaining to certain matters previously pending under a former employee's official responsibility), 18 U S.C § 207(b) (one-year ban on involvement in negotiations pertaining to certain treaties previously pending before a former employee's agency) Other provisions in section 207 apply only to members of Congress or their employees *See, e.g.,* 18 U.S C § 207(e).

[4] Section 207(d) is similarly limited, applying only to very senior personnel specified in that provision of the statute. *See* 18 U S C § 207(d) (1994)

95

priate rate of pay which the duties would warrant.'' *Id.* § 3374(a)(2) & (c)(1). The federal agency may reimburse the detailing employer, in whole or in part, for the detailee's pay. *Id.* § 3374(c). Employees assigned under either of these methods may receive compensation exceeding the ES–5 level under a number of different circumstances.

## II.

We turn first to assignees who occupy positions ordinarily compensated at the ES–5 level or above, when the federal contribution to their salaries is less than the amount of ES–5 compensation. These assignees may be detailed to such positions, with the employer paying all or at least most of their salaries. Apparently, DOE also appoints some of these assignees and receives reimbursement from the detailing employers.[5] *See* Office of Personnel Management, *A Handbook on the Intergovernmental Personnel Act Mobility Program*, at 3 (1998) (''OPM Handbook'') (''Cost-sharing arrangements for mobility assignments are negotiated between the participating organizations.''). These assignees, we believe, are covered by section 207(c).

The IPA declares that all detailees and appointees to federal agencies are federal employees for purposes of section 207. 5 U.S.C. § 3374(b) & (c)(2).[6] Because section 207(c), by its terms, covers federal employees who occupy positions compensated at a ''basic rate of pay . . . equal to or greater than the rate of basic pay payable for [ES–5],'' 18 U.S.C. § 207(c)(2)(A)(ii), and because assignees in this first category occupy such positions and, in fact, receive pay above the ES–5 level, they seem to fall squarely within section 207(c).

This conclusion fits the purposes of section 207(c). Congress intended section 207(c), first enacted in title V of the Ethics in Government Act of 1978, Pub. L. No. 95–521, 92 Stat. 1824, 1864,[7] to curb the influence that a former employee who carried out high or senior-level duties and responsibilities could exert, by virtue of special knowledge and a supervisory role, over former colleagues and subordinates.[8] The danger Congress sought to avoid arose from the nature of the

---

[5] Editor's Note. Subsequent to the issuance of this opinion, DOE informed this Office that it has never had a practice of appointing some assignees and receiving reimbursement from the detailing employers

[6] *See* 5 U.S.C. § 3372 (providing that an employee assigned from an institution of higher education to a federal agency receives the same treatment as an employee of a state or local government assigned to such an agency); *see also Applicability of 18 U.S.C. § 207(c) to President-Elect's Transition Team*, 12 Op O.L C. 264 (1988).

[7] Title V was passed as part of an effort to develop federal ethics rules that could ''prevent corruption and other official misconduct'' and to ''avoid *even the appearance* of public office being used for personal or private gain.'' Senate Comm on Governmental Affairs, *Public Officials Integrity Act of 1977*, S. Rep. No. 95–170, at 78 (1977), *reprinted in* Senate Comm on Governmental Affairs, 96th Cong , *Office of Government Ethics and Federal Post-Employment Restrictions. Legislative History of Titles IV and V of the Ethics in Government Act of 1979, As Amended* 75, 78 (Comm Print 1980) (''Governmental Affairs Report'') (emphasis added).

[8] As a report summarizing title V explained, section 207(c) was ''intended to eliminate a major part of the problems relating to the exertion of influence by former [high-level] employees over their former colleagues and subordinates after they leave the government. The one year bar as to such contacts has the effect of removing the opportunity for such influence for the period when, as a practical matter, such contacts would be viewed as having such effect.'' Governmental Affairs Report at 120

duties the federal employee performs, for which the employee's pay is a proxy. We find nothing to indicate that Congress believed that assignees performing high-level or senior duties while in a federal agency — as indicated by the pay to which the federal government had found occupants of their positions to be entitled — somehow would not pose this danger of undue influence merely because the federal government did not pay their entire salaries.[9]

The conclusion that the assignees here are subject to the requirements of section 207(c) is also supported by the legislative history of section 3374. Although the legislative history of section 3374, which was enacted eight years before section 207(c)'s passage,[10] could not refer specifically to the one-year "cooling off" period, the committee report expressed Congress's understanding that "[a]n employee who is detailed to the Federal Government would remain a State government employee for most purposes . . . [but such employees] would be considered Federal employees for the purpose of certain Federal employee laws including those relating to conflict of interest." *See* H.R. Rep. No. 91–1733, at 19 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5879, 5897–98.

To be sure, the federal agency's contribution to the salaries of assignees in this first category would fall below the ES–5 level, but in this instance there would be no reason to believe that the allocation of financial responsibility would be based on a decision by the agency that the responsibilities of the assignee would not justify the total salary to be received. The position would remain classified at ES–5. In paying less than this amount, the federal agency would just be gaining a benefit from the non-federal employer's willingness to continue the assignee's pay.

### III.

We turn next to detailees who occupy positions ordinarily below the ES–5 level, but who are compensated at or above that level because of a federal payment that supplements the salary they receive from their university or state or local government employers. We understand that, in DOE's view, these assignees, although paid at the ES–5 level, should not be regarded as senior employees, as long as the positions they hold would ordinarily come within the General Schedule. *See* DOE Memorandum at 1. Two arguments are advanced in support of this position. First, positions covered by the General Schedule are typically

---

[9] Indeed, although we do not place reliance on subsequent legislative history, we note that lawmakers, in the year after section 207(c)'s enactment, were concerned that these requirements would make it difficult to move back and forth between positions in the federal government and positions in universities or state and local governments. *See* 125 Cong Rec 11,474 (1979) (statement of Rep Ford) ("[W]e spend several million dollars a year on the Intergovernmental Personnel Act, which is designed to let us lend to the State governments and for the State governments to lend back to us people with particular expertise, but the way this bill is written, it will leave the mistake that we made in the last Congress. That mistake says that no one can leave the Federal Government and go work for the State government.")

[10] *See* Pub L. No 91–648, 84 Stat 1909, 1923 (1971)

regarded as non-senior, with duties and responsibilities that, while perhaps important, are generally not considered high- level. *Id.* Second, DOE generally provides funding to supplement the university or government salary that an assignee would otherwise receive not to compensate for senior or high-level duties, but to ensure that DOE remains competitive with private-sector or academic institutions employing individuals with qualifications and backgrounds similar to those of its employees. *Id.* at 2.

We believe the language of section 3374(c) of the IPA forecloses the argument that a detailee in this category is not "employed in a position . . . for which the basic rate of pay . . . is equal to or greater than the rate of basic pay payable for [ES–5]," 18 U.S.C. § 207(c)(2)(A)(ii), whether or not the detailee holds a position ordinarily covered by the General Schedule. Detailees are not entitled to any pay directly from a federal agency *unless* the agency has determined that

> the pay [to be received by the detailee] . . . is less than the appropriate rate of pay which [his or her] duties would warrant under the applicable pay provisions of this title or other applicable authority.

5 U.S.C. § 3374(c)(1). Thus, under section 3374, an agency may supplement the pay of an IPA detailee only if it determines that the salary the detailee would ordinarily receive would not adequately reflect the importance of the federal duties and responsibilities to be performed.

Because of the standard set out in section 3374, the detailees to DOE who receive salary supplements bringing them to or above the ES–5 level must be considered senior or high-level employees. As a matter of law, an agency's decision under section 3374 to supplement the pay of detailees rests on a determination that the duties to be performed warrant pay at the level selected. In deciding to supplement the pay of detailees to reach the ES–5 level, DOE has thus resolved that, whatever the usual nature of the positions in which they are employed, those persons are performing duties and responsibilities comparable to those carried out by ES–5 level employees. Put differently, DOE has essentially decided that, for the positions the detailees *actually* occupy, the rate of pay exceeds ES–5.

Our conclusion squares with a 1996 decision of the Office of Government Ethics ("OGE"). OGE concluded that section 207(c)'s post-employment restrictions apply to an IPA detailee compensated at the ES–5 level or above. Ethics in Government Reporter, OGE Informal Advisory Letter 96 x 14, at 2 (Aug. 2, 1996). In that case, OGE considered the applicability of section 207(c) to the proposed post-employment activities of an employee detailed from a state university to a federal agency. Rejecting the argument that an agency could properly regard a supplement to the individual's salary as "an allowance or fringe benefit" rather than "basic pay," OGE concluded that section 207(c) applies to detailees whose

basic rate of pay is supplemented to a level above that paid to an ES–5. OGE reasoned, as we do here, that an agency may supplement the pay of a detailee only after making a determination that his or her duties warrant the additional compensation.

## IV.

In the final two situations, an IPA detailee occupies a position ordinarily compensated at a salary less than the ES–5 level but receives from his or her university or state or local government employer a salary equal to or greater than ES–5. The agency then reimburses the detailing employer, in whole or in part. In one of the situations, the amount of that reimbursement from the agency to the university or state or local government is equal to or greater than an ES–5 salary; in the other, it is less. In both situations, while the position *ordinarily* would carry a compensation below the triggering level, the position would appear, *in the actual circumstances*, to carry a compensation above that level.

If the federal contribution reaches the triggering level, we believe that section 207(c) would apply. The decision by a federal agency about the amount of that contribution necessarily rests on a judgment about the value of the services to the federal government. Section 207(c) uses the government's decision about such compensation as a proxy for the employee's responsibility, without requiring any examination into whether, in the particular case, the employee's responsibility is less than the compensation would suggest.

DOE argues, however, that some detailees who occupy positions classified under the General Schedule receive more than an ES–5 salary only because "these positions are very difficult to fill at the GS pay rates, which are not competitive with private-sector or academic positions that require similar qualifications." DOE Memorandum at 2. The detailees, DOE contends, still "perform[ ] GS level duties." *Id.* at 1. This argument assumes that "GS level duties" are uniformly of a nature that would not confer post-employment influence on those who discharged these duties. In practice, however, positions classified under the General Schedule may entail quite weighty responsibility. Employees paid under the General Schedule, for example, regularly appear on behalf of the United States before the Supreme Court. Section 207(c) obviates the need for a case-by-case assessment whether the responsibilities of a particular position are important enough to enable an occupant of the position to exercise post-employment influence. The ES–5 standard in section 207(c) provides a bright-line rule based only on the level of pay. Here, whatever the nominal pay that DOE ascribes to the positions at issue, the agency, in fact, is willing to pay more than an ES–5 salary. In this event, we believe that section 207(c) applies, even if in some instances the statutory proxy exaggerates the employee's level of responsibility.

99

On the other hand, if the federal contribution is less than the triggering level, we believe that the restriction of section 207(c) would not apply. Although the language of section 207(c) might be read to reach the employee who receives compensation above the triggering ES–5 amount even when the government's share is less than that level, the language by no means compels that interpretation. We believe that the "basic rate of pay" for the position is best read to refer to the minimum pay that the federal agency has determined should be paid to the occupant of a given position. The federal agency can make that determination in one of three ways: (1) by classifying the position at a certain pay level; (2) by deciding what amount of money to contribute to a non-federal employer; or (3) by deciding what supplement to a non-federal payment is required to make the total pay reflect "the appropriate rate of pay which [his or her] duties would warrant" under section 3374(c). When the federal agency does not supplement a detailee's pay to ensure that his or her total pay is commensurate with federal responsibilities normally compensated at or above the ES–5 level, and when it reimburses the detailing employer an amount less than that level, the agency cannot be said to have made a determination that the detailee's federal duties warrant compensation at the triggering level specified in the statute. *See* OPM Handbook at 3 ("Cost-sharing arrangements should be based on the extent to which the participating organizations benefit from the assignment."). Rather, in such circumstances, the detailee's receipt of pay at or above the ES–5 level reflects a decision by the *detailing employer* about the suitable level of the detailee's pay. That decision may reflect a judgment based on any number of factors, including the value to the detailing employer of the detailee's federal experience, or a desire to accommodate the interests of a valued employee, but it in no sense reflects a judgment by the *federal agency* that the detailee's federal responsibilities warrant pay at or above the ES–5 level.

We recognize that this interpretation creates an apparent anomaly. Two detailees making the same salary, with the federal contribution the same in both cases, may be treated differently. If a detailee receives most of his salary from the detailing employer but also obtains a supplement from his agency that raises his compensation above the ES–5 level, he or she will become subject to section 207(c). *See* Part III, *supra.* If a detailee is paid the same total salary, all from the detailing employer, and the federal agency reimburses the detailing employer an amount equal to the first detailee's salary supplement, but that salary supplement is less than an ES–5 salary, section 207(c) would not apply. The apparent anomaly results, however, from the determination about a detailee's duties that 5 U.S.C. § 3374(c)(1) requires the agency to make before it can directly pay a detailee. When an agency reimburses the detailing agency by an amount less than

an ES–5 salary, by contrast, there is no ground for concluding that the agency has made the necessary determination about the detailee's duties.[11]

## Conclusion

We therefore conclude that assignees who are compensated at or above the ES–5 level are high-level or senior officials and are subject to the post-employment restrictions of section 207(c), except for those receiving their salaries from their detailing employers, with the federal reimbursement to those employers falling below the ES–5 level.

DANIEL L. KOFFSKY
*Acting Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[11] It is of course possible that an agency might view a detailee's duties as warranting pay at the ES–5 level, but still be able to arrange a lower reimbursement amount with the detailing employer This anomaly results from Congress's decision to adopt a bright line rule using agency decisions about compensation as a proxy for responsibilities